IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**1: CV 00-1230**

MICHAEL J. BUSHMAN,                  :

          Petitioner,         :          CIVIL NO. _____

vs.                                  :          (_____,J.)
                      :          (_____, M.
JAKE MENDEZ, Warden,                 :          **FILED**
                             **SCRANTON**
          Respondent.         :

**JUL 1 0 2000**

PER _____
               DEPUTY CLERK

## MEMORANDUM BRIEF IN SUPPORT OF PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO TITLE 28 U.S.C. § 2241

NOW COMES, the Petitioner, Michael J. Bushman, and appearing
pro se, hereby files this his MEMORANDUM BRIEF IN SUPPORT OF
PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO TITLE 28 U.S.C.
§ 2241, and as grounds for granting same, Petitioner respectfully
presents as follows:

### I. Jurisdiction.

This Court has jurisdiction over this matter pursuant
to Title 21 United States Code § 2241.  See Zannio v. Arnold,
531 F.2d 687 (3d Cir. 1976).

### II. Facts of the Case.

Petitioner brings forth this petition in order to seek
judicial review of the recent (and previous) decisions of
the United States Parole Commission in his case. Petitioner
contends that the Parole Commission has not followed its crieteria,
in this case, appropriate and rational and consistent with
its enabling statute, and that its decision in this case is

1

arbitrary and capricious, and was based on inappropriate and impermissible considerations. See <u>Zannio</u>, at 690-91. Thus, this Court has jurisdiction to review this case. Moreover, the Parole Commission was negligent in their statutory duty by failing to give Petitioner a final parole hearing within the dictates of Title 18 U.S.C. § 4208.

### III. <u>Statement of the Case</u>.

The United States Parole Commission ("Commission") has been in continuous error concerning Petitioner's case since the initial parole hearing held on January 17, 1996. As a result Petitioner has suffered a Due Process and liberty interest violation as a result of these errors.

1. <u>First Cause of Action</u>.

The Commission failed to hold a hearing in this case, as is required by Title 18 United States Code § 4208, which mandates a hearing prior to Petitioner's presumptive parole date, the Commission only held a record review. <u>See</u> Exhibit A, Notice of Action dated March 29, 2000. As a result of the Commission denying Petitioner this hearing, Petitioner was prohibited from raising the issues herein; he was further denied and prevented from presenting mitigating evidence[*] for a decision, such as (a) superior program achievement; (b) unwarranted co-defendant disparity as outlined in the Parole Commission Manual 2.20-09, which has happened in the instant case; (c) the principle of parsimony, as outlined

_____/

[*]   Petitioner was seeking the Commission to retroactively apply his parole date, as his parole was to a non-parolable sentence. The Commission has authority to retoractively apply the correct guidelines.

in § 2.20-07 of the manual.

2. Second Cause of Action.

It is the contention of the Petitioner that the Commission erroneously applied an incorrect offense severity rating and that his correct offense severity rating should have been a Seven, and that his presumptive parole date should have fallen within those guidelines and his range should have been a total of 52 to 80 months. Thus, Petitioner contends that the Commission should issue a retroactive parole date within those guidelines ranges, and that the time that Petitioner has spent incarcerated beyond those ranges should be applied to his non-parolable sentence.

3. Third Cause of Action.

Petitioner challenges the decision of the Commission to "continue to a presumptive parole after service of 159 months to the non-parolable 10 year term." See Exhibit B, Original Notice of Action.

Petitioner contends that this decision is erroneous, arbitrary, capricious and a clear abuse of discretion on the part of the Commission for the following reasons:

(a) The guidelines were incorrectly applied as to offense severity;

(b) A decision outside the guidelines was not supported by the reasons or facts stated in the notice of action;

(c) Especially mitigating circumstances justify a different decision;

3

(d) The decision was based on erroneous information and the actual facts justify a different decision;

(e) The Commission did not follow correct procedures in deciding this case and a different decision would have resulted had the error(s) not occurred;

(f) There was significant information in existence but not known at the time of the hearing;

(g) There are compelling reasons as to why a more lenient decision should have been rendered on the grounds of compassion.

## IV. Argument

### 1. The Guidelines Were Incoorectly Applied as to Offense Severity.

The original and subsequent Notice of Actions states that Petitioner's offense was rated as a Category 8 because "it involved RICO and CCE violations in which the underlying behavior included the distribution of more than 18.75 kilograms of cocaine (purity unknown)."

When Petitioner advanced his guilty plea in the District Court, the government outlines its case against him. First, Petitioner plead guilty to a sufficient number of predicate offenses contained in Section 5 of the Indictment, beginning on page 34, to sustain a plea of guilty.

Mr. Bushman's attorney made it clear at the plea hearing that he was <u>not</u> adopting all of the conduct contained in section 5 of the indictment. <u>See</u> Exhibit A.

In Section 5 of the Indictment, the following types and amounts of narcotics are set forth by the government:

      a) COCAINE:  14 pounds (6363 grams)

      b) MARIJUANA: 127 pounds

      c) METHAQUALONE: 200 units

      d) METHAMPHETAMINE: 3/8 ounce

Subsections (j) and (o) of Section 5 were deleted from the indictment by the government. According to the plea agreement, Counts 39 and 127 were also deleted from the indictment as to Mr. Bushman.

At the plea hearing, the district court had emphasized that the overt acts in sections (a) through (n) [excluding (j) and (o)] "are the action which you [Michael Bushman] are specifically charged with performing in furtherance of this criminal enterprise of racketeering." Exhibit A. P.51.

The government provided a summary of its evidence against Mr. Bushman as to his charges. <u>See</u> Exhibit A pp. 86 to 90. Th government's summary contains the same small quantities listed above and there is no allegation that those quantities under-represented Petitioner's activities.

Petitioner also pled guilty to Count 44 which charged a C.C.E. violation [21 U.S.C. § 848] and  which relied on the same allegations outlined in Section 5 of the indictment as to the CCE conduct and/or predicate offense. Exhibit B.

While Count 44 charges the Petitioner with managing 5 other people, it does not charge Petitioner with managing the Renegade Motorcycle Club. Therefore, while he may be responsible for the activities of the 5 people who may have helped him possess and distribute the drugs as set forth in section 5 of the indictment, which is set forth in detail above, it does not make him accountable for all the drugs distributed by the Club.

The government's summary of the evidence on the CCE is set forth at Exhibit A pages 90 to 91. The government's version establishes that from "1980 up until approximately the date of [the] indictment that the Defendant Bushman would deal on a continuing basis in supplying cocaine and marijuana to William B. Hall and the narcotics would be resold by employees and associates of Mr. Hall to other individuals. Furthermore, individuals who were in the Renegade Motorcycle Club would establish that they provided quantities of narcotics to the defendant Bushman, specifically cocaine, which would be resold by him; that during this period the defendant's primary source of support was through narcotics; that he was not employed during this period and that he would obtain substantial, if not net income, gross income from supplying marijuana and later, primarily cocaine to other individuals. That would be Your Honor, the government's evidence as to Mr. Bushman." Exhibit A.

The district court then inquired of the government as to "what evidence would you have of his leadership role or managerial status:" Exhibit A. The government's response was "The defendant, Bushman, would obtain narcotics and redistribute it to other individuals, that the narcotics were fronted to these individuals for resale and that he was basically supervising the operation in that once the narcotics would be sold, that he would have to be repaid the value of the cocaine primarily." Exhibit A, pp. 90-91

First, Mr. Bushman asserts that the Notice of Action dated February 22, 1996 (as well as subsequent notice of actions) is fatally flawed in that it does not state the facts upon which the Commission is relying in its conclusion that the "underlying offense behavior included distribution of more that 18.75 kilograms of cocaine (purity unknown)." The Notice of Action does not give Mr. Bushman sufficient information to determine whether he should defend against a conclusion that he, personally, was responsible for the distribution of 18.75 kilograms of cocaine or defend against the conclusion that he is accountable for all of the cocaine allegedly distributed by the Renegade Motorcycle Club. Thus, Mr. Bushman has not received "an understandable explanation of his parole status" in violation of 18 U.S.C. § 4206(b). Marshall v. Lansing, 839 F.2d 933, 942 (3d Cir. 1988).

The Commission's conclusion that Petitioner's offense behavior involved 18.75+ kilograms of cocaine is clearly erroneous, arbitrary and capricious, and constitutes a clear abuse of discretion on the Commission's part. The indictment as well as the evidence against Mr. Bushman show that he was responsible for 38.5 ounces (1091 g) of cocaine. This quantity equals and offense severity rating of 5. The PSI provided the Commission with no evidence of any quantity greater than the amounts contained in the indictment and repeated by the government at the plea, except for Petitioner's admission that he estimated that he had sold "roughly 14 pounds of cocaine." Exhibit C, PSI, p.16. The 14 pounds would be the equivalent of 6363 grams of unknown purity, or a category 7 offense.

The PSI or court transcripts contain no evidence that would support the Commission's contentions made at page 8 of Exhibit D that the Petitioner "participated in the distribution of approximately 24 pounds of 70% pure cocaine between 1983 and 1984 and approximately twenty-four kilograms of cocaine which was approximately 90% pure between 1984 and 1987."[*] Petitioner admitted to 14 pounds, in court, the government provided evidence of 38.5 ounces, and now the Commission contends that there is evidence, which was not presented in the trial court, that states 48 pounds. This creates a factual dispute, one that the Commission was

---

[*] It is safe to assume that had Mr. Bushman been actually responsible for over 48 pounds of cocaine, the government would have proffered this in Court. However, this was never offered as evidence, as Mr. Bushman was never responsible for, or could have foreseen, this amount, and there is no evidence in existence that could substantiate this amount. Mr. Bushman was only actually responsible for 14 pounds, a vast difference.

(and is by law) required to resolve by the preponderance of
the evidence standard as outlined in 28 C.F.R. § 2.19(c).
That is, the Commission must have (1) a specific allegation;
(2) reliable witnesses; and (3) corroborating evidence; in
order to use a quantity beyond the 14 pounds to which Mr.
Bushman has admitted. <u>See</u> 28 CFR § 2.20-04. The statements
in the PSI upon which the Commission has relied do not meet
this standard. The offense severity cannot, by law, be rated
as greater than Category Seven, if the Commission is required
to follow its own rules and regulations and makes a decision
based upon those rules and regulations and the preponderance
of the evidence.[*]

Therefore, it is respectfully suggested that this Writ
should be granted, and the Commission required to follow its
own rules and regulations, and thus, place Petitioner in a
Category 7 for his release eligibility.

2. <u>A Decision Outside the Guidelines Was Not Supported by
The Reasons or Facts As Stated In The Notice Of Action</u>.

The reasoning of the Commission for a decision of "more
than 48 months above the lower limit of the guidelines is
warranted because: Your drug distribution took place over
a substantial period of time, approximately 1977-87, and in-
volved an organized criminal activity with approximately 15
people indicted," is clearly erroneous, arbitrary, and capricious,
and constitutes a clear abuse of discretion as it is not based
on the facts.

---

[*] It should be noted that Petitioner was not in charge of the club. He received small quantities
of drugs that either he sold himself or gave to a few others to distribute for him. He had
no control over the activities of his co-defendants in the Club who may have also distributed drugs on
their own, nor is there any evidence that their individual activities were reasonably foreseeable to
him. Under <u>Farese v. Luther</u>, 953 F.2d 49 (3d Cir. 1992), Petitioner should be held accountable only
for the quantities of drugs he distributed — a CATEGORY SEVEN (7) OFFENSE.

9

First, there is absolutely **no factual basis** for the statement
that Petitioner was involved in drug distribution between
1977 to 1987 (a period of ten years). The PSI states at page
21 that Petitioner was not discharged from the Navy until
1978. Mr. Bushman received an Honorable Discharge from the
Navy. The government did not establish that Petitioner became
involved in the distribution of narcotics until the summer
of 1980. Petitioner admitted to his involvement between 1980
and 1984, PSI, p.16, and the Indictment and the government's
factual basis claim no overt (or covert) acts by the Petitioner
after the winter of 1985. Therefore, the evidence conclusively
shows that Petitioner was not continuously involved in a distribution
scheme for ten years.

As to the second reason stated, Petitioner certainly
has no control over how many people the government arbitrarily
decides to put into one indictment. The government's factual
basis and the evidence adduced therefrom conclusively show
that Petitioner allegedly had control over only _five_ people
who, as claimed by the government, assisted him in distributing
the small quantities mentioned in the indictment. Pursuant
to the law in this Circuit, Petitioner cannot be accountable
for the activities of everyone mentioned in the indictment
or conspiracy. Farese v. Luther, 953 F.2d 49 (3d Cir. 1992).
Under the facts in this case, the number of people named in
the indictment has no significant bearing on Petitioner's
cupability and cannot be used as a reason to taken him more
than 48 months above the lower limits of the category.

10

3. Especially Mitigating Circumstances Justify A Different Decision.

Petitioner has no significant prior record. Petitioner had enlisted in the United States Navy at the age of 17, performed well, and received an Honorable Discharge in 1978. Petitioner began his involvement in this offense at approximately age 22 and, in his version of the offense, Petitioner stated that he became involved in drug sales to support his own addiction to cocaine. The assets reported by the Probation Officer support the conclusion that he did not receive substantial financial gain from this activity, but used the profits to support his own substance abuse.

To require the service of twenty-years for a first offender* who became involved in criminal activity at age 22 to support his own drug use is extremely harsh and the mitigating circumstances set forth above support a more lenient decision. The Commission, in failing to consider this clearly abused its discretion, and acted in a manner which was arbitrary and capricious as well as violative of its own rules and regulations.

4. The Decision of the Commission Was Based on Erroneous Information And The Actual Facts Justify A Different Decision.

Petitioner incorporates herein section 1 above, in its entirety. Additionally, the Commission did not have before it the information that the government agreed to delete from Count 2 of the Indictment, section 5(o) which had alleged that Petitioner was involved in the explosion and burning

---
* It should also be noted that Petitioner's co-defendant's had serious criminal histories, and were prior offenders. Mr. Bushman received the harshest parole decision from among his co-defendants, and is the only one still remaining incarcerated.

11

of the drug treatment center. <u>See</u> Exhibit A, p. 48. The government did not pursue this allegation against Mr. Bushman, for several reasons. The government agreed to delete this charge and offered no proof that Mr. Bushman was involved in that arson. Petitioner denied any involvement in this activity, and same is related in the Defendant's Version of the PSI.  Yet, the Commission states that "[t]he subject had an active role and is described in the PSI as providing a Thermit (sic) grenade to destroy a drug center. The subject denies his guilt with regards to this specific act and state that it was to have been removed from the PSI."

Although the Notice of Actions do not mention the arson, it does appear that it may have played a role in the decision making process. There is no evidence to link the Petitioner to that crime and the allegation was striken from the indictment at the plea.

5. <u>The Commission Did Not Follow Correct Procedures In Deciding Petitioner's Parole And A Different Decision Would Have Resulted Had The Error Not Occurred</u>.

First, The Commission failed to apply the "preponderance of the evidence" standard in determining Petitioner's Offense Severity Rating, this violates 28 CFR §§ 2.29(c), 2.20-04, and constitutes a clear abuse of discretion on the Commission's Part.

Second, the Commission failed to follow 28 CFR §§ 2.2-04 and 2.20-03.

The note to § 2.2-04 states that generally the non-parolable sentence would be served first.  This factor is important, as Mr. Bushman should have served the 10-year non-parolable CCE sentence first, and all the time in custody should be credited against the CCE sentence. The Notice of Action states that the Commission is not following this procedure, but rather, would parole Petitioner to the CCE sentence. This error becomes important when applying § 2.20-03(B). This provisions reads, in pertinent part, as follows:

> NON-PAROLABLE FEDERAL SENTENCES. Credit is given towards the guidelines for any time served on an non-parolable federal sentence if the behavior to which the non-parolable sentence refers is considered in assessing the guidelines. The Notice of Action would therefore state that the prisoner is continued to a date that will require a total service of ____ months in custody ....

28 CFR § 2.20-03(B). The Notice of Action in this case does not reflect that the Commission has credited Petitioner with the time served on the 10 year CCE towards the guidelines assessed. The Commission is required to do so.

5. <u>The Commission Failed To Provide A Hearing As Required By Title 18 United States Code § 4208</u>.

The record is clear on this regards, as is evidenced by Exhibit D, the Commission only held paper review on the Petitioner, however, the Commission is required, by law, to provide Petitioner with a statutory interm hearing every two years, and a hearing at least 60 days prior to his release date The Commission failed in this regards.

This hearing was important, as the Petitioner would have been able to present mitigating evidence at the hearing. Evidence that would have justified a different decision, and retroactive application of his presumptive parole date. These include co-defendant disparity (unwarranted); parsimony; superior program achievement.

Review by this Court is necessary to insure that the Commission "has followed criteria appropriate and rational and consistent" with its enabling statutes and that its "decision is not arbitrary or capricious, nor based on impermissible considerations" <u>Zannio v. Arnold</u>, 531 F.2d 687, 690 (3d Cir. 1976); <u>see also</u> 28 CFR § 2.18.

Most of Petitioner's co-defendant's had lengthy criminal records, while Petitioner is a first-time offender. Petitioner's co-defendants were imprisoned based on the same indictment, however, have long been released on parole. This clearly shows an unwarranted co-defendant disparity in violation of 28 CFR § 2.20-09, as well as the principle of parsimony, 28 CFR § 2.20-07.

Moreover, Petitioner was denied meaningful parole consideration of his superior programing achievement, as well as his heroic activities in saving another inmate's life while performing CPR. A packet was submitted to the Parole Commission, way before the scheduled hearing date, and is attached hereto as Exhibit E.

14

Prior to the schedule hearing, the Commission had before it a record of Petitioner's institutional performance, programing certifications, educational progress, work performance in UNICOR, as well as memoranda describing Petitioner's meritorious heroic acts. There was (and is) not reason for the Commission not to consider this record in its determination, and to retroactively apply a more favorable date. See Kirby v. United States, 463 F.Supp. 703 (1979); see also Shahid v. Crawford, 430 F.Supp. 126 (M.D. Ala. 1977).

6. Summary.

It is clear that the Commission has held the Petitioner in a higher offense severity rating than is permissible under the Commission's manual and 28 CFR. The Commission had absolutely no reliable evidence in order to substantiate its arbitrary and capricious decision. It is a fundamental principle of federal jurisprudence that the courts require evidence to enhance an inmates offense severity to be more reliable than a bald assertion. See Gambino v. Morris, 134 F.3d 156, 162-63 (3d Cir. 1998); United States v. Cannisano, 917 F.2d 1057, 1061 (8th Cir. 1990) (reliable information needed to justify upward departure); Cf. Coralluzzo v. New York, 420 F.Supp. 582, 598 (WDNY 1976), aff'd, 566 F.2d 375 (2d Cir. 1977). Under 18 U.S.C. § 4206(c) the Commission must establish good cause for denying release on parole under the appropriate guidelines, a factor sorely missing in this case, and that the Commission must have a substantial reason

15

backed by reliable evidence, another factor sorely missing here, and must be done in good faith and on factors which are not arbitrary, irrational, unreasonable, irrelevant or capricious. Gambino, 134 F.3d at 162-63.

Therefore, it is evident that this Court should grant this writ and the relief requested therein.

7. Conclusion.

WHEREFORE, facts and premises considered, the Petitioner prays that this Court grant this Petition as moved therein.

Dated: ~~June~~ July 6 2000                    Respectfully submitted:


Michael J. Bushman
Reg. No. 22758-083
USP Allenwood
P.O. Box 3000
White Deer, PA. 17887-3000


DECLARATION UNDER PENALTY OF PERJURY:

I declare under penalty of perjury that the facts contained herein are true and correct. Executed on this  6  day of ~~June~~ July 2000.


Michael J. Bushman